**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.   15-CR-10324-DPW** |
| | ) | |
| **W. CARL REICHEL** | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

A federal grand jury returned a 17-page speaking indictment against one defendant—Carl Reichel—charging him with one count: conspiring to violate the Anti-Kickback Statute. Notwithstanding this robust indictment, complete with 20 separate "manner and means" paragraphs and 21 examples of overt acts, the Defendant has moved for a Bill of Particulars (Dkt. No. 21) (hereinafter "Def. Mot."), claiming that, without more information, he cannot "adequately (and efficiently) prepare for a trial." Def. Mot. at 3. In fact, the highly-detailed indictment puts the Defendant on clear notice of the single charge against him, and for this reason alone, the Motion should be denied. Since the indictment was returned, the Government has been diligently preparing to produce automatic discovery. Rather than wait and see if the Government's discovery provided him with the additional information he supposedly required, the Defendant charged ahead and demanded a Bill of Particulars. Had he waited, the Defendant would have realized that, having received all of the grand jury transcripts, interview reports, exhibits, and numerous additional documents, all in a searchable format, thereby providing him with a roadmap to the Government's case, he could not seriously complain that more "particulars" are needed to defend the case. It is apparent that the true purpose of the Motion is

not to further understand the charge, but rather to attempt to preview the Government's trial evidence, hoping that the Government will not only do his work for him, but will also be limited in what it can be present at trial. Courts in this District and elsewhere have repeatedly recognized that this type of "discovery motion," masquerading as a Motion for a Bill of Particulars, is improper. While it would undoubtedly be helpful for the Defendant to have the Government preview its case and be constrained at trial, because this case does not present the rare situation where a Bill of Particulars is warranted, the Court should deny the Defendant's motion.

## BACKGROUND

On October 28, 2015, a federal grand jury returned a one-count indictment charging the Defendant with Conspiring to Violate the Anti-Kickback Statute, in violation of 18 U.S.C. § 371, for his role in directing the sales force of Warner Chilcott, the New Jersey-based pharmaceutical company of which he was President, to pay kickbacks to health care providers to induce prescriptions of Warner Chilcott's drugs. The Defendant was arraigned on October 29, 2015. Pursuant to Local Rule 116.1(c)(1), automatic discovery is due on November 27, 2015. Since the indictment was returned, the Defendant has sent the Government eight discovery letters, in addition to the instant motion. On November 25, 2015, the Government produced a wealth of discovery to the Defendant.

## ARGUMENT

### I.     Legal Framework

As the First Circuit has noted, "[m]otions for bills of particular are seldom employed in modern federal practice. When pursued, they need be granted only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair

surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993). An indictment is sufficiently particular if it "elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecution of the same offense." *Id.* at 1192 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also* Fed. R. Crim. P. 7(c)(1) ("The indictment…must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."). A bill of particulars need only be granted where the indictment is so vague that it does not comply with these purposes. *See Sepulveda*, 15 F.3d at 1192. An indictment need not be "infinitely specific," nor identify all evidence the Government will present at trial. *Id.*

A bill of particulars is not to be used as a discovery device, with a defendant interrogating the government as to the precise details of every alleged act – all the who, what, and where of every allegations. *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979); *see also United States v. Stryker Biotech, LLC*, 2010 WL 2900684, *2 (D. Mass. Jul. 21, 2010) (Dein, M.J.) ("A bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories."); *United States v. Allen*, 2009 WL 2496472, at *1 (D. Mass. 2009) (Bowler, M.J.) ("A defendant is not entitled to recover evidentiary matters by filing a motion for a bill of particulars."). Instead, a bill of particulars is "intended to give the defendant only that minimum of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d. Cir. 1985).

The relevant inquiry when considering a motion for a bill of particulars, therefore, is not whether the information sought would be helpful to the defense, but whether it is necessary to allow a defendant to prepare his defense and avoid surprise at trial. *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). Where the indictment provides the sought after details, or where the information necessary for the preparation of the defense can be obtains through other means, such as discovery, a bill of particulars is unnecessary and unwarranted. *See, e.g., Sepulveda*, 15 F.3d at 1193 (noting that a bill of particulars was unwarranted where defendants "enjoyed the benefits of modified open-file discovery, *i.e.,* automatic discovery that encompassed all relevant data"); *United States v. Godfrey*, 2013 WL 1414887, at *3 (D. Mass. Apr. 5, 2013) (Bowler, M.J.) (denying bill of particulars where indictment was specific enough and discovery had been provided in a searchable format); *United States v. Kemp*, 2004 WL 2757867, at *8 (E.D. Pa. 2004) ("Courts are especially reluctant to direct the filing of a bill of particulars when the government has provided the defendant with extensive pre-trial discovery.").

Significantly, because a bill of particulars confines the Government's proof to particulars furnished, a request for a bill of particulars should not be granted where the consequences would be to restrict unduly the Government's ability to present its case. *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) (rejecting request in securities fraud case for, *inter alia*, names of investors to whom misrepresentations were made).

**II.    The Court Should Deny Defendant's Motion for a Bill of Particulars Where, as Here, the Indictment is Sufficiently Particular and the Defendant Seeks Discovery, Not Notice of the Charge Against Him**

      A.    <u>The Indictment is Sufficiently Particular</u>

The Defendant asserts that the indictment's "vague description of alleged Warner Chilcott sales practices," Def. Mot. at 1, does not tell him "with whom is alleged to have conspired, and what they are alleged to have done," Def. Mot. at 2. A review of the 17 page indictment demonstrates this is not the case.

The one count indictment contains an extensive description of the defendant's conspiracy. Indeed, the indictment put the defendant on notice of precisely how he accomplished the conspiracy through 20 separate "manners and means" paragraphs. *See* Indictment, ¶ 11. For instance, the indictment states as follows:

> It was part of the conspiracy that REICHEL established a sales strategy of providing remuneration to HCPs, in the form of free dinners, "speaker" payments, and food and drink for HCPs and their staff to induce HCPs to prescribe Warner Chilcott drugs.

*Id.* at ¶ 11(a). Here, in clear English, in the first sub-paragraph of the "Manner and Means" section, the gravamen of the charge is described.

The indictment goes to explain, *inter alia*, that the Defendant provided the Warner Chilcott sales representatives with virtually unlimited expense accounts to take out physicians and other health care professionals ("HCPs"), that sales representatives were required to take out HCPs at least twice each week, and that the Defendant communicated that the purpose of the dinners were not to educate HCPs but rather to pressure them into prescribing Warner Chilcott products. *Id.* at ¶ ¶ 11(b)-(h). The indictment includes a description of the Defendant's highly-specific sales tactic of training sales representatives to have "business conversations" with HCPs at the free dinners

and in subsequent interactions with HCPs. Indeed, the Defendant taught sales representatives to "leverage relationships" that they had built with HCPs through the free dinners and to "hold them accountable" for their supposed commitments to prescribe Warner Chilcott drugs, threatening to stop the free meals if the HCPs did not prescribe more Warner Chilcott products. *Id.* The indictment also charges that the Defendant employed a separate, but related, strategy, with respect to HCPs who were paid "speakers" for Warner Chilcott. The Defendant trained sales representatives to pressure "speakers" to prescribe Warner Chilcott drugs *because they were paid speakers* for the company, warning them that they would no longer be provided with "speaking" engagements unless their prescribing habits increased. *Id.* at ¶ ¶ 11(i)-(m).

The indictment also provides details concerning how the Defendant communicated the kickback strategy to the sales force. *Id.* at ¶ 11(p). It also explains how the Defendant ensured that sales representatives would execute the scheme: by hiring young, aggressive, inexperienced sales representatives, by de-emphasizing selling products based on their clinical attributes, and by failing to provide the sales representatives with robust training concerning compliance with health care laws. *Id.* at ¶¶ 11(q)-(t).

After this extensive description of how the Defendant built the architecture to establish the kickback scheme, the indictment contains no less than 21 separate overt acts describing the execution of the conspiracy. *Id.* at ¶ 12. The overt acts include specific examples where the Defendant not only attended company meetings and trainings where the kickback strategy was discussed, but where the Defendant, himself, provided instructions to sales directors, managers and sales representatives concerning the "med ed" and "speaker" program. *Id.* at ¶¶ 12(a)-(g). From there, the indictment includes examples where directors and managers, having taken

direction from the Defendant, instructed sales representatives, in no uncertain terms, to use the free dinners and "speaker" payments to leverage prescriptions from HCPs. *Id.* at ¶ ¶ 12(h)-(l), (o). The indictment further provides examples where the sales representatives executed the Defendant's strategy, taking HCPs out for "med eds" that were patently social events, pressuring HCPs to prescribe Warner Chilcott products because of these events, and instructing "speakers" that they needed to prescribe more Warner Chilcott products in order to continue to be paid. *Id.* at ¶ ¶ 12(k), (m)-(n), (p)-(u).

Given the 41 paragraphs of the indictment that spell out exactly what the Defendant did, how he did it, and how his sales force executed his direction, the Defendant's Motion should be denied.

## B.   Much of What the Defendant Seeks Was Produced in Discovery

The Government went well beyond the minimum requirements of the federal and local rules and provided early *Jencks* materials and interview reports, even though the vast majority of these materials are not exculpatory. In particular, the Government produced the grand jury transcripts and interview reports of Warner Chilcott witnesses and HCPs, which include detailed statements concerning the practices underlying the indictment. Moreover, the Government produced the *exhibits* to the grand jury transcripts and interview reports. These documents include many of the most important documents in the investigation, providing the Defendant with a "road map" to the Government's case.

The Government has also produced a database of electronic documents that it received from Warner Chilcott during the investigation. The database is in a searchable format, organized by the "custodian" of the email or electronic document. Moreover, the Government has provided a

detailed index of these materials, permitting the Defendant to isolate emails sent or received by particular Warner Chilcott employees.

The Government has also produced a list of the top 150 health care providers that Warner Chilcott paid as speakers. In addition, the Government has produced documents from a number of third parties, including the vendor who operated the Warner Chilcott "med ed" and "speaker" program. This provides the Defendant with a wealth of information concerning these events, including the specific HCPs who attended the events and when and where the events took place.

Finally, in its automatic discovery letter, the Government has not only identified all presently-known co-conspirators, but it has also provided the Defendant with the names of individuals referenced in the indictment.

Had the Defendant simply waited the 28 days that the Local Rules allow the Government to produce automatic discovery, he would have learned that he received much of the information he seeks in his Motion. Indeed, Local Rule 116.1(c)(E) specifically renders the Defendant's first request–for the identification of each alleged coconspirator–moot, as it requires that the Government produce in automatic discovery, "[a]s to each conspiracy charged in the indictment, the name of any person asserted to be a known unindicted coconspirator."[1]  Much of the additional information that Defendant seeks–identification of each HCP alleged to have received illegal remuneration and each transaction that was part of the conspiracy–is encompassed in the Government's automatic discovery. The Government produced 52 grand jury transcripts, 418 grand jury exhibits, and over 300 interview reports and accompanying exhibits. The vast majority of these witnesses are former employees of Warner Chilcott whose statements detail

---

[1] In fact, Local Rule 116.3(d) provides that "[a] defendant participating in automatic discovery should not request information expressly required to be produced under Local Rule 116.1, because all such information is required to be produced automatically in any event."

exactly what they did as a result of the direction they received from the Defendant. In addition to the witness statements and accompanying exhibits, company documents and emails also include information about the illegal remunerations paid to HCPs. Instead of waiting to see if the Government's discovery provided sufficient additional information, the Defendant instead charged ahead with the instant Motion, in addition to his eight discovery letters.[2]

The Defendant erroneously argues that he is entitled to a "list of all persons the Government alleges were induced to prescribe Warner Chilcott drugs," because, without one, he would "undoubtedly be surprised at trial when and if confronted with statements or testimony from doctors whom he does not know and has never met." Def. Mot. at 6. Likewise, the Defendant requests "a list of each transaction that the Government contends is part of the charged conspiracy," because he otherwise "is simply left to guess [] which of these transactions the Government may use to suppose its alleged conspiracy at trial," Def. Mot. at 7. As discussed herein, much of what the Defendant seeks—and more than he is entitled to—has been provided in discovery. Therefore, the Motion should be denied.

Moreover, the indictment alleges a conspiracy, directed by the Defendant, to pay kickbacks to HCPs to induce prescriptions of Warner Chilcott's drugs. The conspiracy was carried out by members of the sales force, which included approximately 800 sales representatives in 2011, each of whom were required–by the Defendant–to do at least two "med ed" events each week. The Defendant is not charged with paying one, ten, or even one thousand specific kickbacks. Rather, the Defendant is charged with conspiring with others to have the

---

[2] Fed. R. Crim P. 7(f) requires a Bill of Particulars to be filed within 14 days of arraignment "*or at a later time if the Court permits*" (emphasis added). The Government would have assented to a request that the Defendant be allowed to review the Government's discovery before determining if a Bill of Particulars was required. Instead, the Defendant sent a letter by email to the Government the night before Veterans' Day demanding a Bill of Particulars be provided, then filed the instant Motion the day after Veterans' Day.

Warner Chilcott sales force provide illegal remuneration as a *regular business practice.* While there were potentially several thousand separate kickbacks, the number of transactions is not material to the conspiracy charge—the crime is the illegal agreement. In short, while the discovery furnished to the Defendant includes a number of examples of illegal executions of the kickback conspiracy, the Government does not have in its possession, custody or control information concerning every single HCP who received illegal remuneration or every single transaction that resulted in a kickback, but this information is not necessary to educate the Defendant against the charge against him. Instead, through the indictment and discovery, the Defendant will not be "surprised" at trial when sales representatives, district managers, and regional sales directors testify to the instructions they received from the Defendant and the illegal remuneration they paid to HCPs in execution of those instructions. Thus, Defendant's request for this information should be denied.

C.      The Government is Not Required to Preview its Trial Evidence

It is clear, given the detailed nature of the indictment, that the information the Defendant seeks is not for the purpose of educating himself about the nature of the charge against him, but rather to preview the Government's evidence. Courts throughout the country, and within this district, however, have uniformly held that a bill of particulars is not an appropriate way of obtaining information on evidentiary matters and is not designed to permit defendants to preview the government's theory of the case. *See, e.g., Smith*, 776 F.2d at 1111 ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only the minimum amount of information necessary to permit the defendant to conduct his *own* investigation.") (emphasis in

original); *United States v. June*, 2011 WL 4443429, at *1 (D. Mass. Sept. 22, 2011) (Neiman,

M.J.) (denying bill of particulars in part where '[d]efendant appears to be engaging more in

discovery than proposed clarification"); *United States v. Hsuan Bin Chen*, 2011 WL 332713, at

*7 (N.D. Cal. Jan. 29, 2011) (denying bill of particulars where "defendants seek extremely

detailed evidence to which they are not entitled through a bill of particulars); *United States v.*

*Allen*, 2009 WL 2496472, at *1 (D. Mass. Aug. 7, 2009) ("A defendant is not entitled to recover

evidentiary matters by filing a motion for a bill of particulars."); *United States v. Ojeikere*, 299 F.

Supp. 2d 254, 261 (S.D.N.Y. 2004) (rejecting a request for a bill of particulars that was "merely

an impermissible attempt to compel the Government provide evidentiary details of its case.");

*United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying a bill of particulars

that sought the "'wheres, whens and with whoms' that Courts have held to be beyond the scope

of a bill of particulars"); *United States v. Guerrerio*, 670 F. Supp. 1215, 1225 (S.D.N.Y. 1987)

("A bill of particulars is not a discovery tool and is not intended to allow defendants a preview of

the evidence or theory of the government's case."). "To hold otherwise would incorrectly require

the government to disclose its trial strategy for proving its allegations." *United States v.*

*DeNunzio*, 2015 WL 3454714, at *1 (D. Mass. May 29, 2015).

Contrary to the Defendant's argument that *United States v. DiMasi*, 2011 WL 468213 (D.

Mass. Fed. 4, 2011) compels the Government to provide a list of all HCPs who received illegal

remuneration, the Government is not required to do the Defendant's investigation. *See* Def. Mot.

at 7. Moreover, *DiMasi* was a far different case involving a discreet set of transactions. In

*DiMasi*, three defendants were charged with conspiracy in a case where the alleged kickbacks

were targeted to one defendant, DiMasi, the Speaker of the Massachusetts House of

11

Representatives. The indictment alleged that it was part of the conspiracy that DiMasi also caused kickbacks to be paid to others. *Id.* at *3. The *DiMasi* court ordered the government to identify the "others" to allow another defendant to understand the scope of the alleged conspiracy (*i.e.*, the intended recipients of the kickbacks caused by defendant DiMasi).

No such mystery exists here. The indictment is clear that the intended recipients of the alleged kickbacks are HCPs. The Defendant therefore attempts to align this indictment with *DiMasi* by arguing that "the Indictment here makes it impossible for Mr. Reichel to address the conspiracy charge against him because key persons allegedly partaking in the alleged conspiracy as simply referred to as 'others.'" *Id.* But that is not the case, as the indictment specifically alleges that the Defendant directed the Warner Chilcott sales force to pay illegal remuneration to HCPs and the "key persons allegedly partaking in the alleged conspiracy" are the unindicted coconspirators that the Government has identified for the Defendant.

Equally unavailing is the Defendant's argument that *United States v. Assilin*, 2005 WL 2365326, at *2-3 (D. Mass. Sept. 9, 2005) requires the Government to identify each alleged kickback. *See* Def. Mot. at 8. In *Assilin,* 13 defendants were charged in a 122 count racketeering indictment; one defendant, charged in only four counts for receiving "rewards" from the Springfield Housing Authority, sought information on the specific contracts that the government alleged were tainted by bribes. 2005 WL 2365326, at *1. Because the bribery allegations pre-dated other events of the alleged criminal enterprise, Magistrate Judge Neiman, labeling it a "close" call, allowed a bill of particulars to "prevent surprise and to save Defendant from undue labor in the preparation of his case." *Id.*

Here, unlike *Assilin* and *DiMasi*, the charged conduct does not involve a specific

12

transaction or claim, but is a scheme and conspiracy directed by the Defendant to pay kickbacks to HCPs so as to induce the prescription of Warner Chilcott's drugs.[3]  Specific examples of the alleged illegal remuneration provided to HCPs are in both the indictment and the materials produced in discovery, including the grand jury transcripts and exhibits, interview reports and exhibits, company emails and other third party documents. In addition, the Government has already undertaken the "undue labor" of reviewing the massive volume of documents produced by Warner Chilcott to identify the documents it deems most relevant and questioned the witnesses about those documents. The Defendant now has the benefit of that labor such that there will be no "surprise" at trial. While the Defendant would undoubtedly like this information, it is well beyond what the law requires.

The Defendant's sweeping demand for lists of all HCPs alleged to have received illegal remuneration and all alleged kickback transactions is, at its core, an impermissible attempt to limit the Government's evidence at trial, which the Court should reject. *See United States v. Abakporo*, 959 F.Supp.2d 382, 388 (S.D.N.Y. 2013) ("It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, but government is not required to disclose additional details about its case. The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished.").

---

[3] This fact similarly distinguishes *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000), *see* Def. Mot. at 8, in which the court ordered the government to identify which of the alleged 2,000 Medicare claims after the government provided "over 200,000 pieces of paper in hundreds of boxes relating to 2,000 Medicare claims" without identifying which claims were false, despite charging defendants with conspiracy to submit false claims under 18 U.S.C. § 1035. *Id.* at 571. Notably, the *Nachamie* court denied the majority of particulars sought, including requests seeking (1) "the date … each conspirator joined the alleged conspiracy;" (2) "all persons present when each [undescribed overt] act was committed;" (3) the identify of "each person who allegedly attended each of the alleged meetings;" and (4) "by and to whom [each false claim] was submitted and … the manner in which [defendant] 'caused' it to be submitted." *Id.* at 575-76.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's Motion for a Bill of Particulars.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ *Miranda Hooker*
Miranda Hooker, BBO# 661569
David S. Schumacher, BBI# 647917
Assistant U.S. Attorneys
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


 /s/ *Miranda Hooker*
Miranda Hooker
Assistant United States Attorney

DATE: November 27, 2015

14